Thank you, Your Honor. May it please the Court. The reversible error below was the District Court's conclusion that, quote, this is one of those cases where the specification is of such detail that it describes the invention. That resulted in limitations being read into the claims and effectively nullified the whole point of the broadening reissue patent. With the Court's permission, I'd like to first address fibrous bed of fibers and then turn later to tufts of fibers. So first, if we consider the claim in context as required by Phillips, we see that the limitations of insulating fibers, binding fibers, and layers were removed from Claim 1. In addition, those limitations do not appear in Claim 45. Instead, they appear for the very first time in dependent claims that depend from Claim 45. Further, the reissued... In order for you to prevail, do you both have to prevail on the use of a unitary material and also prevail on showing that there's not three layers? In other words, this kind of all mushes together in the briefs, but if we find that there's clear indication that there is not three layers in the accused device, is that sufficient to defeat your case? No. And the reason is, is if we turn to the stipulation at the bottom of page 3 and top of page 4 in the appellate record, the stipulated order states that this stipulation is subject to any appeal that Lidell may take based on the Court's claim construction ruling and may be negated by a decision altering the Court's decision. So even if you disagreed with me with respect to fibrous bed of fibers, which I would like to continue to argue, but you agreed with me that a tuft of fiber is simply a cluster of fibers, then a remand would certainly be appropriate. With respect to fibrous bed of fibers... Then, of course, you're going to have to deal with the specification column 6, 50, 55, column 11, 1 through 12. You're going to have to deal with those points that the district court uses to say you've got to have three layers and there've got to be two separate kinds of material in those layers. Correct. And if we take a look at the claim in context and in particular look first at the reissue declaration. In the reissue declaration, the applicant made crystal clear and the PTO agreed that the reissue claims were broad enough to cover a homogeneous bed of material. Now, the district court itself conceded that there was nothing in the claim language that required fibrous bed of fibers in isolation to be layered. In addition, the district... I'm a little confused about that because it seems to me there are two issues. One is the number of layers and one is whether or not the fiber is all the same or different kind of insulation, right? Yes, you're right. So how does the reissue go to the number of layers? It seems to me the reissue... Couldn't the reissue be read to say they're the same material, but they're three layers? How does the reissue, the language in the reissue, go to the issue of one layer, single layer versus multiple layers? I think that that's a good example of where if we juxtapose what happened with Claim 1 with what was present in Claim 45 in the reissue. The word layers, insulating layer and binding layers, those limitations were removed from Claim 1. Those limitations do not appear and never appeared in Claim 45. Instead, they appear for the very first time in dependent claims that depend from Claim 45. You can see that it claims 48, 49 and 51. Now, it doesn't matter whether or not the BAT... If the court agrees with me that the BAT need not be layered, it doesn't matter whether or not it's homogeneous. But the fact... But if we disagree and we think that we're reading the claims in the context of the specification and we conclude that a single layer does not fit, is this case over? No, it's not. First of all, we did not have an opportunity for discovery in this case. This was a limited stipulation in accordance with what I just mentioned. We still believe we can prove infringement even under the doctrine of equivalence if BAT of fibers is still required to be a layer. But if the court alters either of these constructions, we believe that a remand would be appropriate and discovery should be allowed to proceed. I think that it's important... Go to column 11, 1 through 12, if you would, where we see discussion of different layers and how they can be made up of different materials. Organic, inorganic, it goes through it quite clearly. Yes. And if you turn to, for example, page 9 in the blue brief, I think you can see an enlarged color version of this language that you're talking about. And here we see that the highlighted terms state that the insulating fibers... What page again was that? Page 9 in the blue brief. Thank you. The insulating fibers may be polyester fibers. The binding fibers are normally polyester fibers. So the applicant is making clear here in the discussion of the BAT that it can be made up of the same material. And that's consistent with how the applicant used the term BAT and fibrous BAT throughout the specification, including, for example, in the background where he referred repeatedly to generic, unlayered, homogeneous BATs of fiberglass, which we can see at column 1, line 61 through 62, where the applicant stated the shields generally are at least in part fibrous in nature, for example, BATs of fiberglass. And again at column 1... But if we can return to this section, you pointed us to the polyester point, but it says the insulating, that's the middle layer, right, is usually, preferably, going to be inorganic. And then the binding, that's the organic, normally inorganic, that suggests a difference, doesn't it? And then you look at figure 5, which shows that pretty clearly. I think it suggests the opposite, and here's why. Column 11, lines 1 through 13, say that the insulating fibers may be at least in part organic fibers, such as polyester fibers. And as noted by the district court, that language indicated an awareness and a desire to capture a broader configuration of the BAT. That language right there in the specification, part of the written description, and that was confirmed by the other intrinsic evidence of record, which was the reissue declaration itself, where the applicant and the PTO both agreed, basically, that the language would cover a homogeneous BAT of material. Let's go on to the Tufts, if we can, for a second. With respect to Tufts, this is actually a very interesting issue. The question is, what is a Tuft? It's not, how is it made? Just a second, with one issue I can kind of pull out of that. Doesn't the spec pretty clearly say you're going to have Tufted upper and lower surfaces, suggesting, in fact it says in column 13, that you've got needles going up and down? Needled and needly. Needling from both sides of the BAT. That's one example. Whether it's up and down or forward and back or whatever, you've got both sides of the BAT. That's one example that's disclosed in the patent. That's column 13, yeah. Yes, and I think it's important to note here that the terms needled and needly disposed through the BAT were actually separate terms that were 3 and 6 in pages 36 and 37 of the appellate record, which was the table the district court filled out. Needled was construed to be made by a needle punching process. Needly disposed through the BAT was construed to be placed from one section of the BAT to an opposing section of the BAT by way of a needle. So everybody agrees that a Tuft is formed by a needle. Okay, and these limitations discuss how the Tuft is created. All we have to do here with respect to a Tuft of fiber is determine what is the Tuft. And here everybody agrees, as noted by the district court, that another... The district court's saying the needling has to be up and down strokes, both sides of the BAT, and you're just saying, well, any cluster of fibers is a Tuft. Why isn't the district court right if we read column 6 and column 13 and look at the figure 5 again that's got the Tufts in both directions? Okay, with respect to... So first of all, everybody agrees that a Tuft is a cluster. Yeah, no problem. Now, if we're looking beyond that, if we're actually going to go into... You've got to show us how the district court imported limitations from the spec. Why doesn't the spec tell us that that's what the invention is? If we look at figure 10, we see single-sided needling. If we look at column 12, line 63 through column 13, line 1, where we're discussing figure 10, the specification teaches that in this context of single-sided needling, as the needle is, quote, withdrawn back through, end be pulled with the needles to form stitches. So as you push through, you're going to create a cluster of fibers at the bottom, and as you withdraw the needle back through, you're also going to be creating a cluster of fibers. And I guess it's important to remember here that the invention, what the actual invention here is this fibrous BAT of fibers where you have a needled stitch that extends from the top to the bottom. You have a cluster of fibers on either end of the stitch, and you can secure them in place with an adhesive. That's the invention. That's what provides this improved Z-directional strength that prevents the BAT from falling apart. And going back to your Honor's question about column 6, I think that column 6, lines 6 through 41, make clear that we're discussing several primary discoveries that have nothing at all to do with the structure of the BAT, which is evidence that the invention was not limited, or not intended to be limited, to the multilayered BAT. You're talking about the subsidiary discovery language? Yes. There's discussion of several primary discoveries as well as subsidiary discoveries. And then also the reference at, sorry, one moment, at lines 35 through 41, as one of the subsidiary discoveries, it was talking about having a tufted upper surface and a tufted lower surface on the fibrous BAT insulating material. But at 50, it starts talking about the present invention, and that carries on down to a tufted upper and tufted lower surface at line 59, right? Yes, it does. And the interesting thing about the present invention here, the general recitations of present invention in this case, as opposed to other cases, is that there's no statement in the specification that the present invention is this specific type of multilayered BAT needle in a very specific manner. Every reference to the invention or the present invention is instead very general and non-limiting. If we were to go down this slippery slope of looking to subsequent sentences or subsequent paragraphs or subsequent columns and start reading all those limitations into the claim, it's going to undermine the public notice function here of the present invention cases. It would help me to know what this invention really advanced over the art. What did it advance? What it advanced over the art was by securing these tufts along the top and along the bottom of the BAT, it prevented this BAT from falling apart underneath your car. It's a thermal and acoustical shield, keeps the heat out, keeps it quiet in your car. Prior to this, BATs were known, unlayered BATs, layered BATs, needling, one-sided and two-sided. What wasn't known, though, was having a needled stitch that extended from the top to the bottom with a cluster of fibers on either side that could then be secured in place with an adhesive. This patent makes clear that you can do that. It gives examples of you doing it with single-sided needling as well as for two-sided needling. But here I really think that the critical question with tufts is not how it's made for the purposes of this appeal, it's simply what is it? And everybody agrees that a tuft is a cluster. You're into your rebuttal time of which you decided not to save much. You want to save it? I'll save it. We'll give you your full two minutes. Mr. Otts. Thank you, Gary. The district court judge, we've got it right here, there is only one invention and it includes a three-layered composite product that's two-sided needled. And the needling has to be a binding layer from one side, you have to go all the way through and form a tuft on the opposite side. So when this goes through horizontally, you've got a bed of needles, like the old Hindus used to have a bed of nails. Then the needles come down, it hits here, also one from the bottom. Needles are barbed. And figure 5 exactly shows what they are. We've got figure 5 in front of us. Okay. What you see, it's got the barb. The barb pulls the material down from one layer down through the insulating layer to the other one. And that forms a stitch because some of the binding material comes down. When the needle goes the opposite direction, it's pulled out, it doesn't pull anything. I think they misconstrued the word pulled when he asked the question about tufts on both sides. If we are talking about the tufts, don't you have to deal with the figure 10 that column 8, lines 4 to 6, brief description of the drawings. That is referred to as a needling technique. And it says to produce the fiber as described. And then again, in figure 6. And it's got the needles going one direction. That just shows the technique. That's not a different embodiment, your honor. That just shows what and how the needle works in pulling material from one layer through the insulating layer to the other. There's nothing in here. If this had to be another embodiment, they could have said it. They know how to say when something is a different embodiment like they did in the column 7, when I talk about figure 7, they say that's another embodiment. They didn't say that with respect to figure 10 and it's not. Again, in column 12, the last paragraph that carries over to 13, the very first sentence says the needling technique used, needling used to produce the present bat is illustrated in figure 10. Column 12, line 53, the needling used to produce the present bat is shown in figure 10. So we're talking about the present bat. It's not another embodiment. They could have said it. So the invention is being produced by needles that go in one direction. No. That's what it just said. The needling used in producing the present bat is illustrated in 10, one direction. So the invention must be one direction needles, at least in one case. No, it refers to figure 5, your honor, down at the bottom of that column 12. It refers to the needling technique is used in figure 5. There's only one invention here. That's shown in figure 5. You're saying in figure 5 there are tufts on both sides and in each case they arise from needles having been introduced on the opposite side. We have to go from tufts on the bottom, you have to have needles on the top. Tufts on top, you have to have needles on the bottom. That's correct. Where does the specification say that? Look over in column 13, the very top. Carry over of column 12. It says by using, third line, conventional needling machines where needling is conducted from both sides of the bat. Where needling is conducted from both sides, but then we've got another example where needling is produced from one side, right? No, it's not an example. That just shows the technique used from one side of the two side. That's all it does. It just shows how tufts are formed by pulling material down through the bat all the way from the top layer all the way through and out the bottom. Matter of fact, Judge Cone in his decision actually says that when he talks about what the needling disposed to the bat is. He refers to figure 10. He says needling disposed to the bat is simple and must be given as ordinary means understood. The needle punching process is depicted in figure 10 of the two-sided needling. So it has to go all the way through. Matter of fact, the specification says the needles have to go through about an eighth of an inch or quarter of an inch. One of the barbs has to go completely through the material to the other side to form the tuft. You're saying there would be no purpose in having a figure 10 from the opposite direction? No. That just shows the technique used in figure 5 to produce it. Same technique. The claims do have a notice function, as I said. In this case, the specification is very clear. You have to take the patentee as his word. That's the public function of the specification. It's only one embodiment. Repeatedly, they say the invention is, and they break up in many sentences, but it's a paragraph which describes the invention. Invention is a three-layered composite material. Matter of fact, composite is used 15 times in the specification. We check that out. It's not in the claim, but it's in the spec. Do you agree with the other side that if we agree with you on the one-layer versus three-layers, we still have to reach the composition? I think you have to reach them both. Yes, Your Honor. I'm looking for a moment at the claims on that particular point. We have in Claim 45 a statement of the invention, but then we have Claim 48, which requires clearly three layers, whereas Claim 45 doesn't. Now, the seminal case of Phillips turned largely on claim differentiation. This is a clear instance of claim differentiation where you have a narrower dependent claim. Why doesn't that suggest that the independent claim is indeed broad enough to include only a single layer? Well, claim construction, claim differentiation, it's just one of the rules of claim construction, but it's not absolute. It can be modified in the case where the invention and the specification... But this certainly cuts pretty heavily against you, doesn't it? It's their argument. The claim differentiation applies, but I don't think it does in this case. Matter of fact, there are cases like Honeywell and others which say you can ignore that if the specification, which is the Bible that we have to look at, only shows one embodiment, one invention, and that's what happens here. You can't take these terms out of context like they're trying to do. I think it's litigation-induced a lot, but they're trying to look at each little term and saying that each one is ordinary meaning and then trying to apply this claim to something which it doesn't apply to. Well, where does the claim say unequivocally that you have to have different material and different layers? That's from the specification, Your Honor. Show me that. There's 18 columns, 65 lines. I've read it all. There's one part of one sentence which gives them any argument whatsoever and it says, at least in part, you can have some part of a polyester material or a binding material into the insulating layers. These are insulating products. You need an insulating layer. You can't have a homogeneous product. Homogeneous is not used anywhere. The specification indicates that there's an insulating layer and binding layers. Two binding layers, correct. That's right. So that's the picture shows- But why couldn't you have three layers? Polyester on top, polyester perhaps laid a different direction in the middle, and polyester laid again a different direction in the third layer. Three layers, all the same material. Did you have that? That's not what this specification requires. Oh, actually, that's exactly what column 11 says. It says you can have polyester in all three layers. I disagree with you, Your Honor, because what that says, if your requirement for thermal insulation is not as necessary, in other words, you don't need as much- It says pretty clearly the insulating layers, preferably inorganic, and then they list things that that could be, polyester, then the binding fibers, normally organic, and then they list polyester again, which tells you you could have polyester in all the layers. You could have three layers. They'd all be polyester, right? No, I disagree. I don't think that's a reasonable interpretation of this. It says at least in part, you could have some- Why does it mention polyester in all three layers then? Because it says at least in part, you still have to have some inorganic material such as fiberglass in there. It says at least in part. You're saying it could be 100%. It can't be. At least in part, to me, means you can have some of it. You still have to have some of the insulating material. You have to have a composite of at least two different materials. Except it says just before that the insulating fibers need not be inorganic. Now, maybe- It says need not be organic, and maybe, at least in part, polyorganic. That's right. I think you're taking this thing- You have to look at this thing as a whole. The concept here is to produce a noise and heat attenuation shield that has better integrity in the vertical direction, Z direction as it's called. What they do is they want insulation. That's why they have fiberglass. That has a lot of air in it, and it has good insulating properties from both noise and heat. But then they have to bind it together because it has no integrity by itself. As it says in the patent, they put binding layers in the top and the bottom, and then they stitch it by needling from the top to provide tufts in the bottom. They stitch it from the bottom to provide tufts in the top, and then they put adhesive on both to bind those tufts in the top and bottom. That creates your integrity-type product. That is what this whole product is in this patent. That's the only thing it relates to. It's the only thing it talks about. There are no other embodiments. There really aren't. There is an insulating layer and two binding layers. Insulating and two binding. That's correct. It's a three-layer product. It can't be homogeneous. You can have part of one. That's the key point, even if one or the other is a mixture of organic and inorganic. You still need three layers. That's correct. You still need tufts to be formed from one side all the way through to the other side. That's clear, too. I don't think figure 10 is a second embodiment whatsoever, as they're saying. They're taking that way out of context in the patent. I think the fact that they did get this through the patent office and the reissue raises two issues. One is, as a general rule, a patentee can't make statements that say his claims are broader than they really are after the fact. That's discounted highly by all the cases. But then in this case, they told the examiner they were entitled to homogeneous material. Examiner never checked. It was his duty to go back and check. Where is it? It's also their duty, like those duties, to point out to the examiner where that is. They never did that. Examiner took them at their word. Their word is wrong. There is no embodiment of a homogeneous embodiment in this patent. And so the fact that they have a claim that doesn't talk about the three layers, it still has to be read into it, as Judge Cohen concluded, based on his understanding of what invention is. The public has a right to read this patent and companies do and form what they do, make their products and proceed accordingly. The way this is read is the way Judge Cohen read it. Are figures 7 and 8 one layer or two? What are those? Figure 7. Oh, that's two shields, one on top of the other. There's actually six layers there. Oh, I thought you told me that figure 5 was the only invention here. What's 7 and 8? The 7 shows two separate inventions together. What's figure 6B? That's just a schematic of what the shield is with the strippable foil on top and the bottom showing the adhesive. That's all. It's not a single layer product. It's just what the draftsman made up. It's for a different purpose. It doesn't show a separate embodiment. It doesn't refer to it as being a separate embodiment. When they wanted to refer to a separate embodiment, they did. The other thing I wanted to mention about making the claims broader and reissue, there is a real serious validity problem here, which you didn't get to, but Judge Cohen knew. And when you interpret claims, you have to interpret them to be valid rather than invalid. That's one of the also rules of claim construction. Well, not exactly. I mean, if they're two reasonable constructions that are close, you might pick one as some sort of a tiebreaker. But otherwise, we don't construe claims just in a way to preserve validity. Okay, you're right. I went a little too far with what I was saying. But yes, in this case, what the judge did was construe the claim in a way to make it valid. I think it's invalid under reissue statute because it's not the same invention. The invention is a three-layer composite product. It's not in claim 1 now or claim 45. That's an issue we'll get to as the case ever continues. But I think what Judge Cohen and his claim construction did, if you read all of the claim constructions, they only objected to 13. Read them all together, look at what the essence of the whole invention is, the concept of this patent. It's this three-layered composite product. It's double-needled, needle from both sides. Formed tufts on both sides. That's what this claim should cover. And that's what Judge Cohen said it covered. Thank you, Your Honor. Thank you, Mr. Rost. Mr. Meese has two minutes. Thank you, Your Honor. The bottom line is that the defendant in this case is attempting to re-argue the losing position in Phillips. In Phillips, the district court in the original panel who heard the case concluded that nowhere in the patent was there a disclosure of a specific type of baffle. Here, the defendant's arguing that nowhere in the patent is there a disclosure of single-sided needling. Nowhere in the patent is there a disclosure of an unlayered bat. That's the same type of argument made in Phillips and it should be rejected here for the same types of contextual reasons for which it was rejected in Phillips. In particular, if we look at the contextual tools of looking at the language in the claim, the language in other claims, the language that was removed from other claims, the doctrinal claim differentiation, the consistent usage of the term bat and fibrous bat throughout the specification, and also the other intrinsic evidence of record such as, for example, the reissue declaration itself, we believe that these provide substantial support for Lidell's proposed construction and the defendant has not and cannot distinguish Phillips. I want to respond directly to the issue of validity. This court has said that in Phillips at page 1327, we have not endorsed a validity analysis as a regular component of claim construction. The defendant dismissed that validity in the lower court. That's not an issue on appeal. The defendant did attack indirectly the fact that this is a broadening reissue patent and he focused on the statements that were made in the reissue declaration. But it's important to note that it's not just statements. It was amendments as well and that's what the examiner reviewed and approved. And then with respect to the at least in part language that the defendant was referencing in column 11 lines 1 through 13, again we have to look at the usage of that term consistently throughout the patent as required by Phillips at page 1314. And here the applicant in the background said at line 61 through 62 of column 1, the shields generally are, quote, at least in part fibrous in nature. For example, bats of fiberglass. There is a clear example. Thank you, Mr. Meese. Your time is up and we'll take the case on revival.